# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|                              |     |                       |
|------------------------------|-----|-----------------------|
| VICENTE QUIROZ,              | )   |                       |
|                              | )   |                       |
| Petitioner,                  | )   |                       |
|                              | )   | 18 C 3121             |
| v.                           | )   |                       |
|                              | )   |                       |
| UNITED STATES OF AMERICA,    | )   | Judge Thomas M. Durkin |
|                              | )   |                       |
| Respondent.                  | )   |                       |

## MEMORANDUM OPINION AND ORDER

*Pro se* petitioner Vicente Quiroz was charged and convicted in two separate criminal cases before this Court: (1) case number 13 CR 21-2, a jury trial concerning a marijuana transaction and conspiracy (the "marijuana case" and "marijuana trial"); and (2) case number 13 CR 968, a bench trial concerning a methamphetamine transaction and conspiracy (the "methamphetamine case" and "methamphetamine trial"). R. 5 at 1. The Court sentenced Quiroz to 180 months' imprisonment in each case, to run concurrently. 13 CR 968, R. 161; 13 CR 21-2, R. 185. The Seventh Circuit affirmed his convictions on appeal. *United States v. Quiroz*, 874 F.3d 562, 571 (7th Cir. 2017). Quiroz then filed a timely petition for relief under 28 U.S.C. § 2255, raising numerous issues regarding the underlying proceedings. R. 1. For the following reasons, the Court denies Quiroz's petition in its entirety.

**BACKGROUND**

## I. Underlying Facts and Trials

*Background facts.* Quiroz brokered large drug transactions. *Quiroz*, 574 F.3d at 564. In 2011, Quiroz met drug buyer Benjamin Vance. Vance was arrested by the Drug Enforcement Agency ("DEA") for trafficking in cocaine in May 2012, and began cooperating with the government thereafter. *Id.* at 565. Ultimately, Vance entered into a plea agreement in which the government agreed to recommend a reduced prison sentence in exchange for Vance's honest testimony against Quiroz.

In a series of recorded phone calls from October 2012 through January 2013, Quiroz and Vance arranged the purchase of almost 70 pounds of methamphetamine and 1,200 pounds of marijuana. *Id.* at 565. First, Quiroz and Vance discussed the October 10, 2012 delivery of nearly 22 pounds of methamphetamine to one of Vance's supposed associates, an undercover DEA agent, from a courier named Javier in California. *Id.* Quiroz and Vance also discussed the October 22, 2012 delivery of nearly 50 pounds of methamphetamine to Vance from a courier named Cesar near Chicago. *Id.* Approximately 44 pounds of methamphetamine were delivered during this second transaction. *Id.* Then, in early January 2013, Quiroz told Vance that marijuana was available for delivery by a courier named Hector Barraza. *Id.* The DEA arrested Barraza after he delivered nearly 1,200 pounds of marijuana to Vance in Berwyn, Illinois. *Id.*

On March 27, 2013, DEA Agents Christopher O'Reilly and David Brazao arrested Quiroz outside his mother's house in Phoenix, Arizona. *Id.* After Agent

O'Reilly read Quiroz his *Miranda* rights, reciting partly from his *Miranda* card and partly from his own memory, Quiroz responded, "I did nothing." *Id.* Agents O'Reilly and Brazao then explained their investigation to Quiroz and told him about the phone recordings they acquired. *Id.* Quiroz made inculpatory statements, and the agents then transported him to the Phoenix DEA office. *Id.* There, Quiroz told agents he would not sign any *Miranda* waiver or other paperwork, but admitted that he had arranged transactions involving roughly 70 pounds of methamphetamine, while at the same time insisting that he never touched the drugs or made any money from the transactions. *Id.* at 565-66. Quiroz also admitted to talking to Vance and setting up the January 2013 marijuana transaction. *Id.*

**Indictments.** On February 7, 2013, Quiroz was indicted on three counts related to the marijuana transaction. Barraza was named Quiroz's co-defendant. The government subsequently dismissed Count 3 of the indictment, leaving charges of: (1) conspiracy to possess with intent to distribute 100 kilograms or more of marijuana; and (2) possession with intent to distribute 100 kilograms or more of marijuana. 13 CR 21-2, R. 223 at 4. Meanwhile, Quiroz was charged in a second indictment in December 2013 with: (1) conspiracy to knowingly and intentionally possess, with intent to possess and to distribute, 50 grams or more of methamphetamine; and (2) knowingly and intentionally distributing 50 grams or more of methamphetamine. 13 CR 968, R. 209. The marijuana case was initially assigned to the Honorable Judge Elaine E. Bucklo, and the methamphetamine case to this Court. The marijuana case was reassigned to this Court in August 2014.

***Quiroz's lawyers.*** Over the course of the proceedings in the marijuana case, Quiroz was appointed three lawyers: John T. Moran, Viviana Ramirez, and Steven Shobat. R. 1 at 4. Mr. Moran moved to withdraw as counsel in July 2013—two and a half months after his appointment—citing "fundamental disagreements" with Quiroz over "case strategy, communications and other matters." 13 CR 21-2, R. 40 at 1. Ms. Ramirez was appointed thereafter, and remained Quiroz's counsel until Quiroz's oral request for her removal was granted just over a month later, and Mr. Shobat was appointed in her place. 13 CR 21-2, R. 43 and R. 55. Mr. Shobat was also appointed to represent Quiroz in the methamphetamine case. 13 CR 968, R. 10. Mr. Shobat twice moved to withdraw in each case, citing Quiroz's failure to cooperate with him and discuss the evidence in order to prepare for trial. 13 CR 21-2, R. 78 and R. 101; 13 CR 968, R. 18 and 42. Such motions ultimately were either withdrawn or denied, however, because Quiroz represented to the Court and counsel that he would work with Mr. Shobat going forward and that he desired Mr. Shobat to remain as his counsel. 13 CR 21-2, R. 81 and R. 102; 13 CR 968, R. 46.

***Pro se filings.*** Notwithstanding that he was represented by counsel, the Court (and Judge Bucklo before it) allowed Quiroz to file numerous motions and other documents on the Court's docket *pro se*. By way of example, Quiroz filed documents asserting: that his indictments were predicated on perjured testimony presented to the grand jury and that the indictments should be dismissed because of "outrageous government conduct" and vindictive prosecution; that he was entitled to a bill of particulars; that he had not been provided with certain discovery; that he was coerced

into committing criminal conduct; that he could not be charged with conspiracy; that his alleged co-conspirators' statements could not be admitted; that his post-arrest statements were improperly obtained; and suggesting that his attorney and the government were colluding. *See generally* dockets in 13 CR 21-2 and 13 CR 968. The Court addressed each such motion.

*Methamphetamine trial.* Ultimately, the methamphetamine case proceeded to trial first in January 2015. At the final pre-trial conference, Quiroz orally requested a hearing on the issue of whether he had received a proper *Miranda* warning. *Quiroz*, 874 F.3d at 566. The Court held a suppression hearing. Agent O'Reilly was the only government witness, and Quiroz, though present, neither testified nor otherwise presented evidence. In the end, the Court credited O'Reilly's testimony and determined that Quiroz had been properly advised of his rights. *Id.* The Court found that Quiroz's statement "I did nothing" was a voluntary, knowing and intelligent waiver of his rights, and admitted his post-arrest statements at trial.

Quiroz also filed a *pro se* motion in limine "to preclude the prosecution from introducing any and all hearsay not substantiated by the Court." 13 CR 968, R. 93 at 1. The Court denied the motion but preserved Quiroz's ability to object at trial to any hearsay offered. 13 CR 968, R. 204 at 109-110. Quiroz waived his right to a jury trial. At the bench trial, no objections were made to the introduction of informant Vance's out-of-court statements, and alleged co-conspirators Javier and Cesar's testimony also was admitted. *Quiroz*, 874 F.3d at 566. At the conclusion of the case, the Court

made extensive findings of fact in open court and convicted Quiroz on both charges. 13 CR 968, R. 105.

*Marijuana trial.* Quiroz's jury trial in the marijuana case was held in July 2015. 13 CR 21-2, R. 133-37. Shortly before trial, Quiroz moved to suppress his post-arrest statements for the same reasons he had in the methamphetamine case. The government and the defense indicated that any hearing would involve the same evidence the Court had heard at the suppression hearing in the marijuana case. Accordingly, the Court denied Quiroz's motion and admitted the statements. The Court also admitted the out-of-court statements of informant Vance and alleged co-conspirator (and co-defendant) Barraza. The jury returned a guilty verdict on both charges. 13 CR 21-2, R. 137 and R. 271 at 6.

*Post-trial motions.* Quiroz filed post-trial motions through counsel for judgment of acquittal or, alternatively, a new trial, in both cases. He argued that the evidence presented could not support a conclusion beyond a reasonable doubt that Quiroz knowingly conspired to possess with intent to distribute and that Quiroz did distribute the marijuana or methamphetamine as charged. And he argued that a new trial was warranted in the alternative for the same reasons, and because the Court erred in denying the motion to suppress his post-arrest statements and admitting the co-conspirator statements of Barraza (in the marijuana trial), and Javier and Cesar (in the methamphetamine trial). 13 CR 968, R. 106; 13 CR 21-2, R. 141. Quiroz also filed a *pro se* motion for a new trial in the methamphetamine case. 13 CR 968, R. 107.

The Court denied the post-trial motions in the methamphetamine case, having determined as to the motion for acquittal that "there was more than adequate evidence to convict the defendant" based on "the statements of the defendant himself" and the "reasonable conclusions that could be drawn from these statements." 13 CR 968, R. 112 at 2. The Court also denied Quiroz's motion for a new trial, because—as it had already determined—Quiroz had been advised of his rights, waived them, and made a voluntary statement thereafter, and because the evidence of a conspiracy meant co-conspirator statements were proper under Federal Rule of Evidence 801(d)(2)(E). *Id.* at 3. Quiroz's post-trial motions for acquittal and a new trial in the marijuana case were denied for the same reasons. *See generally* 13 CR 21-2, R. at 223.

Quiroz filed numerous other motions and documents *pro se* following his convictions in both cases—raising largely the same issues he did prior to trial— which the Court denied. *See, e.g.*, 13 CR 968, R. 119 (minute entry denying "motion for evidentiary hearing and for reconstruction of the evidence to its original form" because the motion objected to issues "dealt with in earlier orders," including among others alleged *Brady* violations, vindictive actions of the Government in seeking a second indictment, manipulation of evidence, perjury by Vance and government agents, and whether Quiroz's statements to agents were voluntary).

***Sentencing.*** The Court consolidated Quiroz's cases for sentencing and conducted a single hearing in September 2016. 13 CR 968, R. 161; 13 CR 21-2, R. 185. Before sentencing Quiroz, the Court discussed and denied the multiple motions Quiroz filed leading up to sentencing that the Court had not yet ruled upon. *See* 13

CR 968, R. 216 at 52-53 (denying post-trial motions including regarding sufficiency of the evidence, pre-indictment delay, perjured testimony of Vance and agents, and vindictive prosecution and outrageous conduct by the government for reasons given in previous written and oral opinions).

To determine Quiroz's sentence, the Court first calculated Quiroz's base offense level. The Court grouped the methamphetamine and marijuana offenses together for this purpose because the underlying conduct in the two cases was "part of the same course of conduct" with Vance as "a common denominator," and the offenses would have been indicted together but for the fact that Barraza was not involved with the methamphetamine. *Id.* at 7-8. The Court determined that the offense level was 38 given the quantities and purities of the drugs involved. There were no objections. *Id.*

Next, the Court calculated a criminal history category of V based on Quiroz's two separate conspiracy and trafficking convictions in 1996 for marijuana and cocaine (6 points total), possession of drug paraphernalia (1 point), domestic assault (1 point), and the fact that some of the offenses occurred while Quiroz was on probation (2 points). *Id.* at 19. Because Quiroz continued to contest his guilt despite overwhelming evidence to the contrary, he did not receive acceptance points (and nor were any requested). *Id.* at 11-12. But the Court also declined to add points for obstruction of justice. *Id.* at 11. In addition, the Court considered Quiroz's argument that his criminal history was overstated given the age of his prior drug offenses, but noted that even if Quiroz had no criminal history, his sentencing guideline range would still be between 235 to 293 months' imprisonment in the methamphetamine case due to

his offense level. *Id*. at 66. The Court then sentenced Quiroz to 180 months' imprisonment on each count in each case to run concurrently, and to 5 years of supervised release. *Id*. at 67, 74-75.

## II.  Post-Sentencing Proceedings

*Appeal.* Quiroz filed a consolidated appeal from his convictions in both cases through separate (appointed) appellate counsel, arguing: (1) that his post-arrest statements were improperly admitted because he did not knowingly, intelligently and voluntarily waive his *Miranda* rights; and (2) that the Court abused its discretion in admitting the out-of-court statements of Vance in both cases, and those of Quiroz's alleged co-conspirators, Cesar in the methamphetamine case, and Barraza in the marijuana case. *Quiroz*, 874 F.3d at 567. The Seventh Circuit affirmed the judgment on both of Quiroz's convictions on October 26, 2017. *Id*. at 571. As to his post-arrest statements, the court held that Quiroz understood his rights even though he did not explicitly acknowledge that understanding, noting his apparent intelligence, that he understood English, and that he was not timid in asserting his rights relating to trial procedures and discovery obligations. *Id*. at 568-69. The court also noted that Quiroz had consented to a protective sweep of his mother's home prior to being questioned by Agents O'Reilly and Brazao. *Id*. at 568. Further, the court found that Vance's out-of-court statements were properly admitted because they were not introduced for their truth, but rather to put Quiroz's "own words in context and to help the jury make sense out of his reaction to what [Vance] said and did." *Id*. at 569-70. The court held that Cesar and Barraza's statements were properly admitted under Rule

801(d)(2)(E) because of independent evidence of a conspiracy. *Id*. at 571. And the court concluded that "even without the recorded statements of Vance, Cesar, and Barraza, the outcome would have been the same;" indeed, Vance's testimony and the properly admitted testimony that it was Quiroz's voice on the telephone recordings "made the government's case against Quiroz overwhelming." *Id*. Quiroz's subsequent requests for rehearing and rehearing *en banc* were denied.

***Section 2255 petition.*** Quiroz then filed his *pro se* Section 2255 petition, submitting with it a flood of documents in support, including: lengthy handwritten briefs; copies of motions and other documents he filed before the Court during the underlying proceedings or submitted to his counsel to file on his behalf; letters he wrote to his counsel complaining about certain alleged failures; documents reflecting information he claims to have received via a FOIA request but not from the government during the underlying proceedings, and which he allege demonstrate his innocence; filings he made to the State of Illinois Judicial Review Board and the Attorney Registration and Disciplinary Commission ("ARDC") regarding the Court; and additional ARDC complaints about Mr. Shobat. Most of the documents also contain handwritten argument by Quiroz, in many cases suggesting that his lawyers, the prosecution, the witnesses and the Court shared the common goal of convicting Quiroz on the charges despite his innocence. While at times difficult to discern, Quiroz's principal arguments appear to be that: (1) admitting his post-arrest statements and the out-of-court statements of the confidential informant and his co-conspirators constituted reversible and constitutional error; (2) there was vindictive

prosecution and "outrageous government conduct;" (3) he is innocent and was entrapped; (4) he was denied effective assistance of trial counsel; (5) his sentence was illegal or improper; and (6) his counsel, the government, and the Court were biased and prejudiced against him and colluded throughout the proceedings. R. 1; R. 6.

## STANDARD

Section 2255 allows "a prisoner under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States. . . [to] move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A criminal defendant is entitled to relief from his conviction and sentence if "the court finds . . . that there has been a denial or infringement of the constitutional rights of the prisoner as to render the judgement vulnerable to collateral attack." *Id.* § 2255(b). A court may deny a Section 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show" that the defendant is not entitled to relief. *Id.* Section 2255 relief is reserved for "extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States,* 733 F.3d 870, 878-79 (7th Cir. 2013).

## ANALYSIS

### I.    Procedural Defects

The Court construes Quiroz's Section 2255 motion liberally because he is *pro se. Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015). But the Court cannot overlook

the fact that some of the issues he raises were already raised before and rejected by the Seventh Circuit on appeal, and others were addressed by this Court during the proceedings in the underlying cases but not raised on appeal. A Section 2255 motion "is neither a recapitulation of nor a substitute for a direct appeal." *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007) (quoting *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds*). The Court first addresses those claims raised before the Seventh Circuit on direct appeal before turning to the claims raised during the underlying proceedings but not again until this motion.

## A. Claims raised and rejected on appeal

First, Quiroz argues that the Court improperly admitted his post-arrest statements and the out-of-court statements of the confidential informant and co-conspirators. But both arguments were made during the underlying criminal proceedings and before the Seventh Circuit on appeal, and therefore may not be reconsidered on a Section 2255 motion absent changed circumstances of fact or law. *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995). Quiroz has failed to present evidence of any changed circumstances that would give the Court reason to revisit these determinations here. Accordingly, the Court denies Quiroz's petition on these issues.

## B. Procedurally defaulted claims[1]

Additionally, although Quiroz argues here and in the underlying proceedings that the government engaged in vindictive prosecution and outrageous conduct—including because it allegedly: "increased the charges" against him "in apperant [sic] response to the defendant's exercise of a procedural right," R. 1 at 10; failed to produce all requested discovery, *id.* at 20; and lied about the drug quantities seized, R. 6 at 48—he failed to raise any of these issues on appeal. Nor did he argue on appeal as he does here and did during the underlying proceedings that government witnesses and agents (including Agent O'Reilly) committed and/or suborned perjury, that the government's expert's testimony was improperly admitted, or that there was insufficient evidence to convict him of the conspiracy charges.

And this is problematic; generally, a claim that could have been raised on direct appeal but wasn't is defaulted when raised in a Section 2255 petition absent evidence of actual innocence or cause and prejudice.[2] *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017) (citing *Hale v. United States*, 710 F.3d 711, 713-14 (7th Cir. 2013)).

The so-called actual innocence exception is based in equity and allows a petitioner to proceed under Section 2255 if he can demonstrate: (1) a legitimate constitutional claim; and (2) a credible and compelling claim of actual innocence.

---

[1] The government does not argue procedural default. But a district court may consider *sua sponte* whether a claim is procedurally defaulted unless the government has affirmatively waived the issue. *See Varela*, 481 F.3d at 936 (affirming denial of Section 2255 motion on procedural default grounds despite that default was not raised by the government).

[2] Quiroz does not claim that his appellate counsel was ineffective, and thus his failure to raise these claims on appeal cannot be excused on that basis.

*Schlup v. Delo,* 513 U.S. 298 (1995). But even assuming an underlying constitutional claim, "tenable actual-innocence pleas are rare." *McQuiggin v. Perkins,* 569 U.S. 383, 386 (2013). The exception is available "only when a petition 'presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 385, 401 (quoting *Schlup,* 513 U.S. at 316). A claim "must have the support of 'reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.'" *Arnold v. Dittmann,* 901 F.3d 830, 836 (7th Cir. 2018) (quoting *Schlup,* 513 U.S. at 324). And that evidence must make it "more likely than not that no reasonable juror would have convicted [the petitioner]." *Id.* Accordingly, to demonstrate actual innocence under *Schlup* and *Arnold*, Quiroz must produce "reliable evidence" that the government's charges are baseless and that his innocence is apparent in something concrete beyond his own claims of such. *Id.* But as both this Court and the Seventh Circuit have already noted, the evidence of Quiroz's guilt is overwhelming. And Quiroz has yet to produce any reliable evidence to the contrary (including to dispute critical evidence such as that it was his voice on the calls). In fact, aside from his bald assertions of innocence, and now-familiar claims that witnesses committed perjury and that he would not have engaged in some of the conduct absent pressure from the confidential informant, Quiroz offers nothing at all. He cannot overcome procedural default on this basis.

Nor has Quiroz demonstrated cause and prejudice. To excuse a procedural default on that basis, Quiroz must demonstrate: (1) good cause for failure to raise the

defaulted claim before collateral review; and (2) actual prejudice because of the violations alleged. *Delatorre*, 847 F.3d at 843 (citing *Theodorou v. United States*, 887 F.2d 1336, 1340 (7th Cir. 1989)). Quiroz makes no argument that he was previously unaware of any of the facts giving rise to these claims, and fails to make any other argument of good cause. And that makes sense; indeed, the Court repeatedly rejected Quiroz's numerous *pro se* motions founded upon the same arguments he once again places before the Court through this motion. Notwithstanding his *pro se* status, Quiroz must present some new argument in support of his claims, or some argument to demonstrate cause and prejudice. *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). Having failed to do so, except as discussed *infra*, the Court rejects each of the claims raised during the underlying proceedings but not on direct appeal as defaulted.

## II. Ineffective Assistance Claims

Quiroz frames many of his claims as arising from ineffective assistance of trial counsel. A "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 504 (2003). And this is true "whether or not the petitioner could have raised the claim on direct appeal." *Id.* at 509. Accordingly, that Quiroz did not raise his ineffective assistance claims before the Seventh Circuit does not by itself doom them. The Court considers their merits below.

## A.    Summary of claims and *Strickland* standard

Quiroz complains that his principal lawyer, Mr. Shobat, was ineffective because he: (1) was personally responsible for the reassignment of the marijuana case to this Court, R. 1 at 9; (2) did not request a bill of particulars, R. 1 at 8; R. 6 at 26; (3) did not request a speedy trial (and nor did his previous lawyers), R. 1 at 8, 19; R. 6 at 34; (4) prevented Quiroz from sharing his version of what happened during the suppression hearing, R. 1 at 11; R. 6 at 27-28; (5) failed to strike a potential juror who was an employee of the court and struck another who could have produced a mistrial, R. 1 at 18; (6) failed to ask for a jury instruction regarding the buyer-seller relationship and failed to object to jury instructions "pick[ed] by the Judge," R. 1 at 27; R. 6 at 47; (7) refused to assert an entrapment defense, R. 6 at 15; (8) did not call Quiroz's co-defendant, Hector Barraza, as a witness, R. 1 at 28-29; and (9) did not challenge his sentencing enhancement or other errors at sentencing, R. 1 at 8.[3]

The test for ineffective assistance is exacting. To succeed on such a claim, Quiroz must show that his lawyer's representation: (1) "fell below an objective standard of reasonableness" (performance prong); and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (prejudice prong). *Strickland v. Washington,* 466 U.S. 668,

---

[3] Quiroz complains generally that his lawyers were not loyal and never did what he requested, and that all three were "irresponsible, deficient, incompetent, [and] willfully and intentionally deter[red] the best outcome" for him. *Id.* at 10, 17, 35, 42. To the extent that by these generalized statements Quiroz complains about something other than what is set forth in this list, the Court denies his claim for lack of specificity.

688, 694 (1984). If a petitioner cannot establish one of the *Strickland* prongs, the Court need not consider the other. *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014). The *Strickland* analysis begins with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Further, a defendant "must 'overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' " *Frentz v. Brown,* 876 F.3d 285, 293 (7th Cir. 2017) (quoting *Strickland,* 466 U.S. at 689). In all cases, a petitioner's unsubstantiated and conclusory statements are insufficient to satisfy his burden under *Strickland. United States v. Turcotte*, 405 F.3d 515, 537 (7th Cir. 2005), *abrogated on other grounds by United States v. Novak*, 841 F.3d 515, 537 (7th Cir. 2016).

### B.    Analysis of claims

*(1) Reassignment of the marijuana case.* Quiroz argues that Mr. Shobat acted against Quiroz's best interests when he transferred the marijuana case from Judge Bucklo to this Court on his "own account" because Judge Bucklo had "approve[d] *pro se* pretrial motions along with a bill of particulars," giving him the "opportunity for the upper hand." R. 1 at 8-9; R. 6 at 17. This claim fails out of the gate. First, while true that Judge Bucklo allowed Quiroz to file *pro se* motions, this Court did too. Second, the record is clear that Judge Bucklo never approved a bill of particulars. *See* 13 CR 21-2, R. 238 at 4 (status hearing immediately prior to reassignment at which Judge Bucklo indicated she would "need briefing on the bill of particulars"). And it was Judge Bucklo, not Mr. Shobat, who proposed that Quiroz's

case be reassigned. 13 CR 21-2, R. 230 at 4-5; *see also DeWindt Corp. v. Scottsdale Ins. Co.*, 110 F. Supp. 2d 700, 701-02 (N.D. Ill. 2000) ("All judges of this court share jurisdiction over cases properly before the Northern District of Illinois, and assignment matters are a matter of court rules."). Accordingly, there can be no ineffective assistance on this basis.

*(2) Bill of particulars.* Quiroz next contends that he was improperly denied a bill of particulars and that his counsel's failure to request one—despite Quiroz's repeated requests and that the Court entertained Quiroz's own such (*pro se*) motion— constituted ineffective assistance. R. 6 at 35. According to Quiroz, a bill of particulars was mandated because the indictments contained references to unknown co-conspirators and failed to set forth the nature of the evidence demonstrating his participation in the alleged conspiracy. *Id.* at 30. And he argues that the government did not state, as he contends it must, whether the agreement was express or implied, or the date, time and place at which Quiroz met any of the alleged co-conspirators. *Id.*

"[A] motion for a bill of particulars lies within the discretion of the trial court." *United States v. Kendall*, 665 F.2d 126, 134 (7th Cir. 1981). In determining whether a bill of particulars is necessary, courts consider "whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial." *United States v. Roya*, 574 F.2d 386, 391 (7th Cir. 1978). A bill of particulars is not necessary where the government provided a "satisfactory form" of retrieval for necessary information. *United States v. Canino*,

949 F.2d 928, 949 (7th Cir. 1991). The Court previously held in the underlying proceedings that Quiroz could not demonstrate the necessity of a bill of particulars to his case. 13 CR 968, R. 83. His Section 2255 motion presents no evidence to contradict the Court's ruling and nor does Quiroz present evidence of prejudice because of it. Lacking evidence that he was entitled to a bill of particulars, there can be no ineffective assistance for failure to request one. This claim fails.

**(3) Speedy trial.** Quiroz also argues that Mr. Shobat's failure to request a speedy trial on his behalf despite repeated requests by Quiroz is evidence not only that Mr. Shobat was ineffective, but also that he worked to "intentionally deter the best outcome" for him. R. 1 at 8-9; R. 6 at 42.

At the outset, the Court notes that it is unclear whether Quiroz claims that his right to a speedy trial under the Speedy Trial Act and/or Sixth Amendment was violated, or whether he argues only that his counsel was ineffective in pursuing his right to a speedy trial.[4] To the extent he alleges the former, the issue is defaulted. And to the extent that he argues the latter, he cannot demonstrate that Mr. Shobat's performance was unreasonable under *Strickland*. Indeed, the lengths and causes of

---

[4] To assess whether a delay between the initiation of his criminal proceedings and the beginning of his trials violated Quiroz's Sixth Amendment right to a speedy trial, courts consider the factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972). That is: (1) the length of the delay; (2) the cause of the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the presence or absence of prejudice resulting from the delay. 407 U.S. at 530-33. In turn, the Speedy Trial Act provides that, "[i]n any case in which a plea of not guilty is entered, the trial of a defendant charged . . . shall commence within seventy days from the filing date . . . of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1).

the delays in Quiroz's cases largely benefitted him. The record indicates that before July 2014 (in the methamphetamine case) and April 2015 (in the marijuana case), Quiroz's counsel was unclear whether Quiroz would go to trial. *See, e.g.*, 13 CR 21-2, R. 241 at 2 (November 22, 2013 status hearing at which Mr. Shobat told Judge Bucklo that he and Quiroz needed some time to discuss "what, if anything, we're going to be doing with this particular case"); *see also* 13 CR 21-2, R. 227 at 2 (March 6, 2014 status hearing before Judge Bucklo at which counsel for the government indicated that "Mr. Shobat and I were trying to . . . globally resolve the cases prior to indictment [of the methamphetamine case]"); 13 CR 21-2, R. 244 at 4 (May 28, 2014 status hearing at which Mr. Shobat told Judge Bucklo that he would be able to report at the next status hearing whether "we'd like either to go to trial or a change of plea"). And Quiroz's cases were tried within a year of his lawyer confirming that he would. *See* 13 CR 968, R. 195 at 4-5, 7 (July 2, 2014 status hearing at which Mr. Shobat agreed that the methamphetamine case should be set for trial); 13 CR 968, R. 98 (reflecting that the methamphetamine trial commenced on January 20, 2015); 13 CR 21-2, R. 112 (April 6, 2015 status hearing setting marijuana case for July 21, 2015 jury trial); 13 CR 21-2, R. 133 (reflecting that the marijuana trial commenced on July 21, 2015). Although multiple delays occurred in the interim in the methamphetamine case, such delays resulted from motions on both sides and were without objection, and in some cases stemmed from Quiroz's lack of cooperation with his counsel. *See, e.g.*, 13 CR 968, R. 197 (August 22, 2014 status hearing at which the Court granted the government's motions to reset the methamphetamine trial to September 2014 (by

agreement) to obtain additional discovery, and to exclude time under the Speedy Trial Act (without objection)); 13 CR 968, R. 193 at 19 (April 3, 2014 status hearing at which the Court granted the government's motion to exclude time under the Speedy Trial Act without objection by Quiroz to allow Quiroz and Mr. Shobat to explore whether they could continue to work together in spite of Quiroz's lack of cooperation up until that point); 13 CR 968, R. 199 (September 19, 2014 status hearing at which the Court denied Mr. Shobat's motion to withdraw but acknowledged the delay arising from Quiroz's lack of cooperation, reset the methamphetamine trial to November 17, 2014 to allow additional time for Mr. Shobat to prepare, and granted the government's motion to exclude time under the Speedy Trial Act without objection by Quiroz). Further delay occurred when counsel sought time to explore the possibility of asserting an entrapment defense. 13 CR 968, R. 201 at 31-34 (October 30, 2014 status hearing at which the Court reset the methamphetamine trial to January 20, 2015 due to possible entrapment defense, and granted the government's motion to exclude time under the Speedy Trial Act without objection by Quiroz). And the marijuana case was delayed so the methamphetamine case could be tried first. 13 CR 21-2, R. 217 at 10-11. As such, it was professionally reasonable to permit or seek such delays. *See United States v. Walsh*, 2016 WL 561908, at *4-5 (N.D. Ill. Feb. 12, 2016) (counsel was not ineffective for failing to defend client's right to speedy trial under Speedy Trial Act and/or Sixth Amendment when client benefited from the extensions). Quiroz's speedy trial claim also fails.

***(4) Suppression hearing and admission of post-arrest statements.***
Quiroz argues that his counsel was ineffective for failing to move to suppress his post-arrest statements, suppressing Quiroz's "version of the events" during the suppression hearing on the same issue, and, together with the Court and the government, knowingly allowing Agent O'Reilly to commit perjury during that hearing. R. 1 at 11; R. 6 at 28. But there can be no prejudice resulting from Mr. Shobat's failure to move to suppress, because Quiroz himself moved to suppress his post-arrest statements and this Court held a suppression hearing on that very issue. *See* 13 CR 968, R. 204 at 25-104. Nor can there be any prejudice resulting from Quiroz's failure to testify at the hearing. Indeed, although initially Mr. Shobat understood that Quiroz would testify, after a break the Court granted so that Quiroz could prepare, Mr. Shobat informed the Court that Quiroz had changed his mind (to which Quiroz—though present—made no objection). *Id.* at 75, 81. And there is no evidence to support that Quiroz's "version of the events"—apparently founded on his contention that he would not have engaged in certain of the transactions but for the urging of the government informant—would have changed the outcome of the hearing in any case. The issues are unrelated. Nor is there any evidence that Agent O'Reilly committed perjury, let alone that the Court, the government and Mr. Shobat knew about it at that time. Accordingly, and because Quiroz took no action to share any of these concerns with the Court during the hearing despite that he was present and has shown himself to be more than capable of asserting his rights, he cannot satisfy either *Strickland* prong.

*(5) Jury selection.* Quiroz also claims that Mr. Shobat was ineffective during jury selection in the marijuana case. First, Quiroz claims that his counsel failed to strike jury members who were "employees of the district court" and "introduce[d]" by the government. R. 1 at 18. But the only juror whose employment was government-related was the juror who worked for the DuPage Office of Education—not the federal government, and certainly not the court. Accordingly, any concerns of bias or unfairness on that basis are unfounded.

Second, Quiroz asserts that his counsel erred by using a peremptory challenge to strike a newspaper reporter as a potential juror who Quiroz believes could have produced a mistrial. *Id.* But Quiroz fails to explain how he knows this, instead merely asserting in conclusory fashion that the jury was not selected "in accordance with the law and constitutional requirements." R. 1 at 129.

Failing to provide evidence to substantiate either allegation, Quiroz has offered no reason to doubt Mr. Shobat's jury selection strategy. *Turcotte*, 405 F.3d at 537 (a petitioner's unsubstantiated and conclusory statements are insufficient to satisfy his burden under *Strickland*). Quiroz's jury selection claims fail.

*(6) Jury instructions.* Quiroz next argues that his counsel was ineffective in the marijuana case both for not proposing a buyer-seller jury instruction and for "allowing the Court to dictate what jury instructions the Court wanted the prosecutor to produce." R. 1 at 27. Again, both arguments fail. First, Mr. Shobat was not ineffective for failing to submit a buyer-seller jury instruction, because his case didn't warrant one. Such an instruction is designed "to ensure that the jury understands

that an agreement to purchase the contraband, without any other agreement to achieve another criminal objective, is not a conspiracy." *United States v. Turner*, 93 F.3d 276, 285 (7th Cir. 1996), *cert denied*, 519 U.S. 1034 (1996). As such, "a defendant is entitled to have a buyer-seller instruction only if the theory is supported by the evidence." *Id.*; *see also* Seventh Circuit Pattern Jury Instruction § 5.10(A), Committee Comment (2012 ed.) (providing that the buyer-seller instruction should be given if "a jury reasonably could find that there was only a buyer-seller relationship rather than a conspiracy"). Here, as explained in the Court's post-trial rulings and as the Seventh Circuit agreed, there was significant evidence of a conspiracy between Quiroz and the couriers in both cases. *See* 13 CR 21-2, R. 223 at 12 (concluding that "[t]he evidence at trial was to the contrary" in response to Quiroz's contention that there was no evidence of conspiracy, and that "[t]here's no question that the defendant was in charge of the deal, or at least a jury could reasonably conclude that he was"); *see also* 13 CR 968, R. 112 at 2-3 (finding "more than adequate evidence to convict the defendant," including the "numerous tape recordings" that made clear that Quiroz "conspired with suppliers and couriers to deliver large amounts of methamphetamine" as part of an "ongoing conspiracy where there was evidence of fronting of the methamphetamine, credits for the methamphetamine, and getting more methamphetamine in the future"); *Quiroz*, 874 F.3d at 570-71 (holding that contrary to Quiroz's argument that the Court clearly erred when it found a conspiracy between Quiroz and the couriers sufficient to admit their out-of-court statements,

"[t]he record indicates otherwise"). Accordingly, Quiroz cannot meet his *Strickland* burden as to either performance or prejudice on this basis.

Quiroz also suggests that it was improper for the Court to ask the government to submit the preliminary instructions from the Seventh Circuit pattern jury instructions, and for Mr. Shobat to fail to object to that directive. R. 1 at 27 (quoting 13 CR 21-2, R. 217 at 54-55 (the Court at the final pretrial conference stating "I'd like the government to submit" pattern instructions 10.01 through 10.12, which concern among other things the functions of the court and jury, the nature of direct versus circumstantial evidence, and the rules regarding juror-notetaking)). Quiroz has not even attempted to explain how the inclusion of those instructions caused him prejudice. And nor could he: the propriety of the preliminary instructions is well-settled. Accordingly, his counsel was not ineffective on this basis, either.

***(7) Entrapment defense.*** Quiroz also argues that his counsel in both trials never listened to or did what Quiroz asked, complaining specifically about his failure to assert an entrapment defense. But the decision not to pursue an entrapment defense was not objectively unreasonable. "Entrapment is a defense to criminal liability when the defendant was not predisposed to commit the charged crime before the intervention of the government's agents and the government's conduct induced him to commit it." *United States v. Mayfield*, 771 F.3d 417, 420 (7th Cir. 2014). It "consists of two temporally distinct elements: government inducement and lack of predisposition." *Ward v. United States*, 858 F.3d 1072, 1075 (7th Cir. 2017). "Where the government has not 'induced' the crime within the meaning of the entrapment

doctrine, . . . the defense is 'unavailable without the need for a more complex inquiry into the evidence of predisposition.' " *Id.* at 1075-76 (quoting *Mayfield*, 771 F.3d at 432).

As the Court stated at sentencing, it would have been "foolish" to present such a defense to the jury, "because there was a lot of [unfavorable] evidence . . . the [factfinder] never heard that they would have heard had [Quiroz] raised such a defense." 13 CR 21-2, R. 226 at 47. And the evidence showed that Quiroz was a "ready, willing, and able partner" in the drug transactions in any case. *Id.* at 54. As such, Mr. Shobat's decision not to raise entrapment "was a sound exercise of defense strategy." *Id.* at 47. Quiroz offers no compelling reason to revisit the Court's conclusions here. Further, while Quiroz did initially urge Mr. Shobat to assert the entrapment defense (and Mr. Shobat took time to consider it), Quiroz also was present and did not object when Mr. Shobat confirmed that his client agreed that after careful consideration, he would not raise the defense. 13 CR 968, R. 203 at 2. Accordingly, Mr. Shobat's representation was not ineffective on this basis.

***(8) Failure to call Barraza as a witness.*** Quiroz also argues that his counsel was ineffective for failing to call his co-defendant Hector Barraza as a witness in the marijuana trial. R. 1 at 28-29. Quiroz argues that Barraza was not "truthful" when he signed the guilty plea because he was "looking at the months in jail." *Id.* at 28. Quiroz also seems to suggest that Barraza's inability to identify him would corroborate his story that they did not know one another and thus that there could be no conspiracy. *See id.* at 29 (quoting defense counsel as stating "It's my expectation

that [Barraza] would probably say that he never actually met my client and, if he were sitting here in this courtroom wouldn't necessarily be able to pick him out."). And Quiroz also suggests that Barraza could testify to unrecorded calls demonstrating his innocence. *See id.* ("The Appellant would have had Barraza testify, there are many unrecorded call [sic] . . . many . . . episodes prearrange [sic] to fit and incriminate the Appellant.").

Generally, an attorney's decision not to call a witness is a matter of strategy that is not subject to review. *See United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005). And strategy was behind Mr. Shobat's choices here. Indeed, Mr. Shobat indicated at the final pretrial conference that he did not intend to call Barraza to testify because even if he were to say that he had not met Quiroz in person, such testimony would not be inconsistent with a conspiracy that included Quiroz and Barraza. 13 CR 21-2, R. 217 at 73-74 (defense counsel stating "as the Court is aware, one can have a conspiracy with someone and not even know who they are"); *see United States v. Missick*, 875 F.2d 1294, 1297 (7th Cir. 1989) ("It is well established that a conspirator need not know all of the members or details of a conspiracy to be held responsible as a co-conspirator."). Further, Quiroz's suggestion that Barraza may have been untruthful when he plead guilty and that he could testify to additional phone calls demonstrating Quiroz's innocence is self-serving and unsupported, and cannot sustain Quiroz's claim. *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (A "defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.").

And the evidence against Quiroz is overwhelming. *See Quiroz*, 874 F.3d at 571 (Quiroz's post-arrest statements, the testimony that it was Quiroz's voice on the recordings and Vance's testimony "made the government's case against Quiroz overwhelming," and that "[e]ven without the recorded statements of Vance, Cesar, and Barraza, the outcome would have been the same"). Accordingly, because Mr. Shobat's decision not to call Barraza was a matter of sound strategy and because Quiroz cannot establish that Barraza's testimony would have produced a different result, neither *Strickland* prong is satisfied. *See Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994) (a petitioner claiming his counsel failed to call a witness must "prove that [the] witness's testimony would have produced a different result"). His claim fails.

***(9) Sentencing and drug calculation.*** Quiroz makes several arguments concerning his sentencing. Specifically, he argues: (1) that his sentencing was unfair because the consolidation of the cases occurred over his objection and the Court sentenced him "by the most shameful," "illegal," and "procedurally incorrect" manner; (2) that his counsel was ineffective for failing to challenge the sentencing enhancement he received based on a drug type not mentioned in the indictment; and (3) that the calculation of the quantity of the methamphetamine seized was predicated upon false testimony. R. 1 at 8, 14; R. 6 at 2, 16, 46.

Generally, a claim of error in the application of the Sentencing Guidelines is not cognizable in a Section 2255 motion. *See Allen v. United States*, 175 F.3d 560, 563 (7th Cir. 1999) ("It is well settled that, absent a fundamental miscarriage of justice,

'arguments based on the Sentencing Guidelines must be raised on direct appeal or not at all.'" (quoting *Martin v. United States*, 109 F.3d 1177, 1178 (7th Cir. 1996) (*per curiam*))). And the Seventh Circuit is "reluctant to allow prisoners to circumvent the rule against raising Sentencing Guideline arguments in collateral proceedings by recasting their Guidelines arguments as claims of ineffective assistance of counsel." *Allen*, 175 F.3d at 563. Indeed, only "Sentencing Guidelines errors of constitutional proportion" resulting from ineffective assistance may be considered. *Id.*

Quiroz's claims fail even if framed as ineffective assistance and setting aside that standard. First, there was nothing illegal or unfair about Quiroz's sentences. To the contrary, not only were his 180-month sentences well below the guideline range of 360 months to life imprisonment, but also the Court permitted them to run concurrently. 13 CR 968, R. 216 at 19, 74-75. Further, Quiroz cannot credibly contend that the consolidation of his cases for sentencing purposes was prejudicial. Indeed, in treating the methamphetamine and marijuana charges together for Sentencing Guidelines calculation purposes, Quiroz was able to avoid an additional criminal history point that otherwise would have been applied because the cases had been indicted and tried separately. *Id.* at 38.

Quiroz's argument that his counsel was ineffective for failing to challenge a sentencing enhancement based on a drug type not mentioned in the indictment is unfounded. No enhancements were applied at sentencing. Instead, the Court carefully walked the lawyers and Quiroz through the offense level and criminal history category calculations, making clear that the calculations were based upon the

charged conduct concerning methamphetamine and marijuana only. *See generally id.* Further, to the extent Quiroz meant by this argument to contend that Mr. Shobat failed to dispute the Court's inclusion of Quiroz's prior marijuana and cocaine offenses in calculating Quiroz's criminal history level, that too fails. Mr. Shobat argued extensively that Quiroz's criminal history was overstated, including because of the age of the prior convictions, and the Court took those arguments into account. *Id.* at 50, 63-64. And no prejudice resulted from the Court's criminal history calculation. Indeed, even if Quiroz had no criminal history at all, the guideline range would have been above the 180 months' imprisonment ordered by the Court. *See id.* at 66 ("If he had zero criminal history points, he'd be at 235 to 293" months' imprisonment).

Finally, Quiroz spends considerable energy arguing that the drug calculations were false, claiming that the "prosecutor and agent . . . intentionally . . . coach [sic] the witness" to enhance the quantity of the methamphetamine seized on October 22, 2012 by 20 or 30 pounds. R. 1 at 14, 16; R. 6 at 2. In support, Quiroz submits two DEA forms he claims to have received via a FOIA request, and which were neither disclosed to the grand jury, nor produced during the underlying proceedings. R. 1 at 41, 42 and R. 6 at 2, 6. The forms, dated October 4 and 22, 2012, indicate that the DEA was "expecting a shipment of 20-30 pounds of methamphetamine (meth) to arrive in the Joliet, IL area" on October 4 or 5, and an additional shipment of 20 pounds "in the O'Hare airport area" on October 22, in both cases through Quiroz. *Id.* Quiroz seems to suggest that the government added the two amounts together to charge him with an October 22 delivery of 50 pounds. But at trial, the Court examined

the methamphetamine that the government represented was seized following the October 2010 transactions at issue. 13 CR 968, R. 206 at 69 and R. 207 at 7-8. And Quiroz stipulated that if called, "a chemist with the Chicago Drug Enforcement Administration would testify that . . . the net weight of Government Exhibit 10/22/12 Narcotics was 20.06 kilograms" and that the purity was such that "the actual amount of methamphetamine in Government Exhibit 10/22/12 Narcotics was 20.03 kilograms" (approximately 44 pounds). 13 CR 968, R. 207 at 54-55. Further, a chemist testified that 9,789 grams (approximately 21.6 pounds) of actual methamphetamine was seized following the October 10, 2012 delivery. 13 CR 968, R. 206 at 222. These numbers were not pulled from the air.

Moreover, even if Quiroz's assertions were true, Quiroz could not demonstrate prejudice, because his offense level would not change despite the lesser amount. *See* USSG § 2D1.1(c)(1) (indicating that offense level 38 applies to actual methamphetamine in the amount of 4.5 kilograms or more, thus including both the nearly 30 kilograms of actual methamphetamine (or approximately 66 pounds) for which Quiroz was convicted, and the approximately 16 kilograms (or 33 pounds) he apparently claims was the amount actually seized). Accordingly, the Court sees no reason to revisit the sentence imposed in Quiroz's cases, which was well within the Court's discretion and below guidelines, and cannot find ineffective assistance of counsel on this basis.

### C.     Collusion, Bias, Prejudice and Impropriety

Quiroz complains broadly of collusion, bias and prejudice against him by and between the Court, the government and his counsel beyond what is discussed above. None of these claims were raised on direct appeal, but they would fail even if not waived or if considered as part of his ineffective assistance claims.

Among other things, Quiroz argues that the Court showed a "lack of impartiality and turned a blind eye to the truth" when it came to the suppression hearing and Quiroz's post-arrest statements because Quiroz is "homeless and not a gentle flower." R. 1 at 11. Quiroz accuses the Court of "fabricat[ing] and us[ing] a new rule of its own to find the Post Arrest Statement credible." *Id*. But Quiroz does not identify or further explain the "new rule" alleged to have been used, and nor does he otherwise offer evidence of any impropriety on this basis.

Quiroz also claims that the Court knew that Agent O'Reilly and his co-conspirators lied during their testimony to the grand jury and at trial. *Id*. at 11, 13, 14. But again, Quiroz fails to provide any evidence to support the accusation.

Quiroz likewise points to the fact that the record demonstrates some level of cooperation between his counsel and the government, quoting from early status conferences in the marijuana case during which his lawyer at the time spoke collectively about the government and defense. *See, e.g., id*. at 6-7 (quoting a May 2013 transcript of a hearing before Judge Bucklo in which Mr. Moran stated "<u>WE</u>'ve already spoken before the Court," and "<u>WE</u>'re going to get more discovery in the Quiroz matter." (emphasis in Quiroz's filing)). But not only is it common for lawyers

32

on opposite sides to meet to discuss and reach agreement on various matters before a court hearing, it is expected and encouraged. There was no impropriety here. Nor was it improper for Judge Bucklo to ask the parties if they wanted to set the matter for trial, as Quiroz seems to suggest. *Id.* at 6 (quoting Judge Bucklo as stating during a status conference "You people would know if you want me to set a trial or what you want me to do.").

The Seventh Circuit has repeatedly warned that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) (citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991); Fed R. App. P. 28(a)(4); *United States v. Brown*, 899 F.2d 677, 679 n.1 (7th Cir. 1990)). Quiroz has failed to set forth a coherent argument, facts or legal precedent in support of these and other vague assertions of impropriety, collusion and bias. Accordingly, habeas relief is not available to him on these grounds either.

## III. Certificate of Appealability

Lastly, the Court declines to issue a certificate of appealability under Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Under 28 U.S.C. § 2253(c)(2), a petitioner is entitled to one if he can make a substantial showing of the denial of a constitutional right. *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003). A petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve

encouragement to proceed further." *Id.* (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). As shown, Quiroz has not made a substantial showing that reasonable jurists could debate whether his motion should have been resolved in a different manner. Therefore, the Court declines to certify any issues for appeal under 28 U.S.C. § 2253(c)(2).

## CONCLUSION

Quiroz's Section 2255 petition continues the theme that persisted throughout the underlying proceedings in both of his cases; that is, placing blame for his predicament on everyone but himself. Those claims that the Court can decipher are procedurally defaulted, were raised and rejected on appeal, and/or lack merit. For these reasons and because his convictions were supported by overwhelming evidence, Quiroz's petition for relief under Section 2255, R. 1, is denied, and the Court declines to issue a certificate of appealability.

ENTERED:

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: November 13, 2019